STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, APPELLEE, v. AMERICAN STATE BANK, APPELLEE: WILLIAM E. FRANK, APPELLANT.

FILED NOVEMBER 24, 1931. No. 27944.

*Wright & Wright,* for appellant.

*I. D. Beynon* and *Mothersead & York, contra.*

Heard before ROSE, GOOD, DAY and PAINE, JJ., and BEGLEY, District Judge.

PER CURIAM.

At the public sale of the American State Bank building in Scottsbluff, Nebraska, a bid of $7,625 was made, objections made thereto by a depositor, and the district court on the day fixed for confirmation directed that a resale be held then and there in open court, whereupon a new bid of $9,000 was made for the said building, which was confirmed by the court. The original bidder filed objections to setting aside the original sale made by the receiver and the refusal of the court to confirm the same and appealed to this court for review.

The American State Bank of Scottsbluff, Nebraska, became insolvent in 1928. H. C. Peterson was duly appointed receiver and A. E. Torgeson was in active charge of the bank under the receiver. On December 11, 1930, upon application of the receiver, the district court entered an order directing the receiver to sell all of the remaining assets of said bank at public auction at the front door of said bank building on January 6, 1931, and notice was given by publication in the Star-Herald for three weeks. At the sale William E. Frank and Louise Frank, of Grand Island, Nebraska, were the highest bidders for the bank building, being lot 12, block 11, original town of Scottsbluff, together with the furniture and fixtures therein, consisting of all of the furniture in the bank at that time except the Burroughs adding machine, their bid being $7,625, and the auctioneer declared said property sold to them, subject to the confirmation of the court. On January 21 the receiver, in making his report of the sale to the Franks, set out that the sale had been fairly conducted and that in his opinion no higher bid could be obtained for the property, and January 26, 1931, was set as the date of hearing upon the objections to the confirmation of said sale. C. H. Westervelt, a depositor in said bank, objected to the sale on the ground that the property did not sell for its fair value and that more money could be obtained for the same. On January 24, 1931, Beach Coleman and three others made an offer to the district court to bid $15,500 for the bank building together with the notes and judgments owned by the bank, which latter had been sold to George A. Carpenter for the sum of $7,400, making the offer of the Coleman associates $475 in excess of the amounts bid at the sale by the Franks and Carpenter upon the two items, and said original bidders were directed by registered mail, sent under order of the district court, to appear on January 26, 1931, and show cause why the bid of the Coleman associates should not be accepted. On the date fixed all the parties were present and the Franks moved for a confirmation of the sale to them. At said time Coleman and his associates offered to raise their bid upon the two items to $16,000, but refused

to bid separately upon the two items. Evidence was taken and said C. H. Westervelt, when asked about the statement made by the auctioneer at the public sale, answered: "Why he made the statement that these bids would be registered and if any one wished to raise the bid they could do so with the district judge any time before confirmation. These bids were all registered; he never announced the sale or any bid; it was all registered bids."

William E. Frank, J. L. Moore, George A. Carpenter, and Herb Moore testified for the appellant that they had not heard statements made at the sale that higher bids could be made before confirmation. It is not denied that the statement was made that the bids taken at the sale were subject to the approval and confirmation by the court, and the court ordered that a resale be then and there held in court, at which time all former bidders were present in court and represented by counsel; the said Torgeson, as assistant to the receiver, reopened the sale, and J. E. Scott bid for the two items $18,201, which was an excess of $3,176 over the original bid for the building and furniture made by the Franks in the sum of $7,625, together with the bid of $7,400 made by Carpenter for the notes and judgments, which made a total of $15,025 for the first two separate bids, the high bid upon the banking house and furniture and fixtures being in the amount of $9,000. The court thereupon declared all of said items were sold to J. E. Scott for the sum of $18,201, and the court upon motion ratified and confirmed said sale. Upon said William E. Frank announcing his intention in open court to appeal from the order refusing to confirm his bid, it was ordered by the court that, upon payment of $9,201 to the receiver, assignment be made to J. E. Scott of all notes, claims and judgments, and that the said J. E. Scott be directed to pay to the receiver the sum of $1,350, or 15 per cent. upon his bid of $9,000 upon the banking house and fixtures, and that the same be held by the receiver to insure the compliance with the bid of J. E. Scott therefor, and that upon the termination of the appeal of the Franks the residue of the purchase price shall be at once due and payable. Cost bond

in the sum of $100 having been filed by the said Franks, said order of confirmation of the district court was brought to this court for review.

The appellant insists that the high bidder at a judicial sale acquires the right to have such sale confirmed, and may appeal from an order setting aside this sale, and gives as his authority *Penn Mutual Life Ins. Co. v. Creighton Theatre Building Co.*, 51 Neb. 659, which holds that an order of the district court setting aside such a sale and ordering a resale is a final order affecting a substantial right of the purchaser, from which he may appeal. This case clearly sustains the right of the appellant to bring the case to this court, and in several cases it has been held that a judicial sale will not be set aside on account of mere inadequacy of price unless such inadequacy is so gross as to make it appear that it was the result of fraud or mistake or to shock the conscience of the court. *First Nat. Bank v. Hunt*, 101 Neb. 743; *Frederick v. Gehling*, 92 Neb. 204; *Lindberg v. Tolle*, 121 Neb. 25. In the latter case it was said: "Under our statute the trial court passes on the regularity of foreclosure sales and the proceedings leading thereto. There are no restrictions upon the means by which that court may be satisfied that the land brought its fair value."

In the sale of the assets of a failed bank, it is the duty of the receiver and of the district judge who passes upon the acts and doings of the receiver to exhaust their best efforts in securing the highest price possible for the assets of a failed bank, to the end that the depositors may secure the largest percentage possible on their deposits. It is argued that the court cannot refuse to confirm a sale made by a receiver except for fraud, mistake, collusion, or gross inadequacy of consideration, so gross as to shock the conscience of the court, and several Nebraska cases are cited in support thereof. It is also advanced in support of the position of the appellant that judicial sales lose their value and the ardor of bidders will be dampened if bidders feel that the high bid is to be considered but an offer, and that

receivers will continue after said sale to secure new bidders who will raise the bid made at the public sale.

We call attention to the case of *Saunders v. Stults,* 189 Ia. 1090, which was the sale of land at receiver's sale, and in the text we find this statement, which is very much to the point: "The appellants' contention overlooks material facts; that is, that the receiver was simply the officer or agent of the court; that this sale was not a completed sale; that it was not in the power of the receiver to make a completed sale which would bind the court to its confirmation; and that those who buy at a receiver's sale, such as we have in this case, take with knowledge of the fact that the contract of sale is not binding on the receiver until the same is presented to the court and approved by the court; that a sale such as we have here is a sale without the right of redemption." See *State Bank v. Green,* 11 Neb. 303.

In the case of *State v. Farmers & Merchants Bank,* 114 Neb. 378, this court said: "The receiver is at all times an officer of the court, subject to its orders and directions, an agent, the scope of whose authority is limited by law. *State v. Bank of Hemingford,* 58 Neb. 818; 23 Cyc. 1065. Thus every one dealing with such receiver knows of the limitations, or lack of limitations, to his power to transact the business of the institution. He cannot without the approval of the court relinquish any of the rights of the trust."

In the case at bar, an offer of $7,625 had been made, and this was raised in open court at the time of confirmation to $9,000, which meant an additional sum of $1,375 could be secured for the benefit of the depositors in this bank. The high bidder at such a sale acquires certain rights which must be protected, and he is entitled to a confirmation of the sale if there is no good reason why it should not be confirmed, and the court is faced with the equities due to the one who has made this high bid on the one hand and with the rights of the depositors and the obligations of the officers in charge of the affairs of the bank on the other hand, and this court holds that the district judge, when all the parties were before him in open court, and when it was evident that more money could be received for the

depositors, acted within his rights in refusing to confirm the high bid made some days before at the public sale and in confirming the higher bid received in open court for this bank property, and the action of the district court is in all things

AFFIRMED.