COMMERCIAL FEDERAL SAVINGS AND LOAN ASSOCIATION, A CORPORATION, APPELLANT, V. ABA CORP., A CORPORATION, ET AL., APPELLEES.

431 N.W.2d 613

Filed November 18, 1988.   No. 86-1083.

William J. Riley, of Fitzgerald, Schorr, Barmettler & Brennan, and, on brief, David H. Fisher, of Fitzgerald, Brown & Dunmire, for appellant.

William D. Kuester, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellees.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

This is an appeal challenging the refusal of a deputy sheriff and a district court to grant Commercial Federal Savings and Loan Association's desire to withdraw its bid at a judicial sale. The Lincoln County District Court granted appellees' motion to confirm the sale and overruled Commercial Federal's motion to set the sale aside. Commercial Federal appeals. We reverse.

Commercial Federal filed a petition for foreclosure of a mortgage on a trailer court owned by the appellees. A decree of foreclosure was entered, in which the court found that Commercial Federal held a first mortgage on the property in the amount of $294,647.45, plus interest. An order of sale was issued to the Lincoln County sheriff. Pursuant to published notice, the sale was opened on October 21, 1986, at 10 a.m. at the Lincoln County courthouse.

In conducting the sale, Deputy Sheriff Jim Henry utilized a bid sheet. The name and bid of each bidder was written on the sheet by either the deputy or the bidder.

At approximately 10:15 a.m., an attorney representing Commercial Federal submitted a bid of $120,000. This bid was entered on the bid sheet by the deputy. At approximately 10:40

a.m., attorney William Kuester submitted a bid of $250,000 on behalf of one of his clients. This bid was entered on the deputy's bid sheet by Kuester.

Shortly thereafter, Commercial Federal's attorney submitted a second bid, this time for $260,000, which the deputy entered on the bid sheet. At 10:55 a.m., Deputy Henry announced that the sale would remain open for 5 more minutes. At that time, Commercial Federal's attorney asked the deputy to withdraw Commercial Federal's last bid. This request was refused because the bid had been written on the bid sheet.

Deputy Henry was willing to allow Commercial Federal to withdraw its bid if Kuester and his client would consent. Such consent was denied, and the deputy closed the sale at approximately 11:02 a.m. The sheriff's return of the order of sale, naming Commercial Federal as the successful bidder with a bid of $260,000, was filed with the court the same day.

All parties filed motions with the court, the appellees seeking confirmation of the sale and Commercial Federal seeking to have the sale set aside. A hearing on both motions was held November 3, 1986. At that hearing, Deputy Henry testified that it was the policy of the Lincoln County Sheriff's Department that, once a bid was written on the bid sheet, it could not be withdrawn.

Commercial Federal's attorney testified that his representation included bidding at sheriffs' sales on property foreclosed by his client. At this particular sale, Commercial Federal's attorney was to

> make the initial bid, which I did, and then, to increase — if a third party was bidding, increase the bid at increments of $10,000.00, without jeopardizing a third party sale; which means that if it comes to the end of the sale and I'm — Commercial Federal seems to be the successful bidder, that I'm to withdraw my highest bid to allow the third party bidder's highest bid to stand.

The court's order dated November 20, 1986, overruled Commercial Federal's motion to set aside the sale and confirmed the sale to Commercial Federal for $260,000. The court held that the deputy's writing of Commercial Federal's bid on the bid sheet constituted acceptance of the bid and that it

could not thereafter be withdrawn. We do not embrace the trial court's reasons for reaching the conclusion that it did.

On appeal, Commercial Federal assigns two errors which are, essentially, the same: The trial court erred in finding that Commercial Federal should not have been allowed to withdraw its final bid at the sheriff's sale.

It is the general rule that the confirmation of judicial sales rests largely within the discretion of the trial court. Consequently, the determination of the trial court will not be disturbed on review except for an abuse of such discretion. The trial court may not, however, exercise its discretion arbitrarily. Its determination is to be one which is sound and equitable in view of all the circumstances. The determination must be in the interest of fairness and prudence, with a regard for the rights of all concerned and the stability of judicial sales. *Sherman v. Schulz,* 220 Neb. 375, 370 N.W.2d 123 (1985); *Nebraska State Bank & Trust Co. v. Wright,* 213 Neb. 822, 331 N.W.2d 535 (1983); *Kleeb v. Kleeb,* 210 Neb. 637, 316 N.W.2d 583 (1982).

Commercial Federal argues that rules applicable to auctions, found in the Nebraska Uniform Commercial Code, apply to sheriffs' sales. Neb. U.C.C. § 2-328 (Reissue 1980) provides: "(2) A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner. . . . (3) . . . [A] bidder may retract his bid until the auctioneer's announcement of completion of the sale, but a bidder's retraction does not revive any previous bid." The U.C.C. applies only to personal property. Commercial Federal's contention that these rules apply is based upon this court's decision in *Nebraska Loan & Trust Co. v. Hamer,* 40 Neb. 281, 58 N.W. 695 (1894). The *Hamer* court held, "The bid only amounts to a proposition to buy, and until the crier of the sale, by the fall of the hammer or other recognized act of acceptance, signifies assent to the proposition there is no contract, and the proposal may be withdrawn." *Id.* at 293, 58 N.W. at 699. This holding was followed in *George v. Pracheil,* 92 Neb. 81, 137 N.W. 880 (1912). Both *Hamer* and *George* involved bids at judicial sales.

The appellees argue that Commercial Federal's practice of sham bidding constitutes a fraud upon the court which should

not be permitted. At a sheriff's sale, also known as a judicial sale, the court is the vendor; the officer conducting the sale is a mere instrument of the court. The stability and integrity of the court is of paramount concern. See, *Smith v. Carnahan*, 83 Neb. 667, 120 N.W. 212 (1909); *Glaser v. Weinberger*, 188 Neb. 205, 196 N.W.2d 113 (1972); *Hull v. Hull*, 183 Neb. 773, 164 N.W.2d 455 (1969).

At a private auction, several items of personal property are generally offered for sale. If a high bidder withdraws his bid on an item before the hammer falls, and no other bids are submitted, the item can be saved until later in the sale and sold again. Judicial sales are ordinarily limited to a short period of time. People often bid and then leave, especially if a higher bid has been submitted. If a parcel of land or item of personal property is not sold because the high bidder withdraws his bid, another order of sale must be issued by the court. The sheriff must, again, publish notice and conduct a sale of that property. A cloud of uncertainty would hang over every judicial sale if high bidders are permitted to withdraw their bids.

As the trial court pointed out, following the rules urged by the appellant could, in a judicial sale, easily result in lower sale prices, to the detriment of those responsible for a deficiency judgment. It would not be difficult for an individual to submit a high bid, thereby discouraging other bidders. That individual could then wait until near the end of the sale, after other potential bidders had left, withdraw his bid, and submit any bid he desired. Clearly, the integrity of the sale and of the court would be undermined.

Judicial sales must be conducted in a reasonable manner under conditions which are not conducive to manipulation, sham bidding, or fraudulent intervention. In order to preserve the integrity of the court and the stability of judicial sales, we find that the *Hamer* and *George* rule, permitting a bidder to withdraw his bid at a judicial sale, must be replaced. To that end, we look to other areas of Nebraska law.

The Legislature recognized the need for stability and integrity in a particular type of auction when it enacted the Nebraska Trust Deeds Act in 1965. Neb. Rev. Stat. § 76-1009 (Reissue 1986) provides in part:

On the date and at the time and place designated in the notice of sale, the trustee shall sell the property at public auction to the highest bidder. The attorney for the trustee may conduct the sale. Any person, including the beneficiary, may bid at the sale. *Every bid shall be deemed an irrevocable offer, and if the purchaser refuses to pay the amount bid by him for the property struck off to him at the sale, the trustee may again sell the property at any time to the highest bidder. The party refusing to pay shall be liable for any loss occasioned thereby* and the trustee may also, in his discretion, thereafter reject any other bid of such person.

(Emphasis supplied.)

In our opinion, the above-emphasized portion of § 76-1009 is a sound rule, not only for auctions of trust property, but also for judicial sales. Accordingly, we now hold that every bid at a judicial sale shall be deemed an irrevocable offer. If the highest bidder at a judicial sale refuses to pay the amount bid by him, thus requiring the property be resold, that person or entity shall be liable for the difference between the price on resale and his, her, or its highest bid. To the extent that *Nebraska Loan & Trust Co. v. Hamer, supra,* and *George v. Pracheil, supra,* hold differently, they are overruled.

However, we cannot ignore the fact that Commercial Federal relied upon a rule in existence for 94 years. Fairness and equity dictate that the above-announced rule of law be effective as of the date of this opinion. Therefore, the trial court's confirmation of the October 21, 1986, sale to Commercial Federal is reversed and the cause remanded with directions to vacate the sale. The district court is ordered to tax the costs of the sale to Commercial Federal.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, J., not participating.